# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| VIRGINIA CHOLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:19-CV-02976 JAR ) |
| BOSTON SCIENTIFIC CORP., | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Boston Scientific Corporation's Motion to Dismiss Plaintiff's Complaint. (Doc. No. 7). The motion is fully briefed and ready for disposition.

**I.  Background**

This case involves a products liability personal injury action arising from the use of the Obtryx™ Transobturator Mid-Urethral Sling System (the "Obtryx Sling"), a surgical mesh product manufactured by Defendant Boston Scientific Corporation ("BSC"). Plaintiff alleges that on or about May 27, 2014, she was implanted with the Obtryx Sling to treat stress urinary incontinence ("SUI") and that "[a]s a result of having the Product implanted in her, [she] has experienced significant mental and physical pain and suffering, has sustained permanent injury, permanent and substantial physical deformity, has undergone and likely will undergo corrective surgery or surgeries, and has suffered financial or economical loss, including, but not limited to obligations for medical services and expenses." (Complaint ("Compl."), Doc. No. 1 at ¶¶ 19-23). Plaintiff asserts claims for Negligence (Count I); Strict Liability – Design Defect (Count II); Strict Liability

- Manufacturing Defect (Count III); Strict Liability – Failure to Warn (Count IV); Breach of Warranties (Count V); Gross Negligence (Count VI)[1]; and Punitive Damages (Count VII).

BSC moves to dismiss Plaintiff's complaint on three grounds: (1) the complaint is an impermissible "shotgun" pleading; (2) the breach of warranty, negligence and strict liability claims are all time-barred; and (3) the claims have not been pled with sufficient particularity, as required by Federal Rules of Civil Procedure 8 and 12(b)(6).

**II.   Legal standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief;" Rule 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show " 'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949 (citing Twombly, 550 U.S. at 555).

Rule 8's pleading standard must be read in conjunction with Rule 12(b)(6), which tests a pleading's legal sufficiency. Rule 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; however, "a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions,

---

[1] Plaintiff has now abandoned her claim of gross negligence. (See Doc. No. 25 at 14). Accordingly, the Court will dismiss that claim with prejudice.

and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555-56. "[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right.' " Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quoting Stalley v. Catholic Health Initiative, 509 F.3d 517, 521 (8th Cir. 2007)).

### III. Discussion

### A. Shotgun pleading

BSC first argues that Plaintiff's complaint should be dismissed in its entirety because it is a "shotgun" pleading replete with non-specific, conclusory allegations. BSC states that while the complaint purports to assert seven separate counts, each count incorporates the preceding allegations, thereby preventing it from understanding which factual allegations pertain to which of Plaintiff's claims. In addition, the complaint fails to provide facts specific to Plaintiff's claims, instead setting out statements concerning pelvic mesh generally from scientific literature and governmental and professional organizations as well as generic allegations of causation. Plaintiff maintains that her complaint contains sufficient factual detail and is filed against a single defendant; thus, it is not an impermissible "shotgun" complaint.

Courts within the Eighth Circuit have generally rejected arguments against incorporation-by-reference pleading where the pleading style does not make understanding the claims more burdensome. Campbell v. Lake Reg'l Med. Mgmt., Inc., No. 2:19-CV-04124-NKL, 2019 WL 4228894, at *3 (W.D. Mo. Sept. 5, 2019) (citing cases). Plaintiff's complaint is far from a "shotgun" pleading in which a plaintiff brings every conceivable claim against every conceivable defendant, resulting in a cause of action so general that it fails to put the various defendants on notice of the allegations against them. See Tatone v. SunTrust Mortg., Inc., 857 F. Supp. 2d 821,

831 (D. Minn. 2012). Upon review and consideration, the Court finds that Plaintiff's complaint is more than sufficient to put BSC on notice of the allegations against it, particularly since each count explicitly states the basis for relief under each legal theory. Cf. Boggs v. Am. Optical Co., No. 4:14-CV-1434 CEJ, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015) (dismissing an asbestos action for failing to plead with sufficient particularity because the complaint was a "shotgun pleading" in which the plaintiff asserted multiple causes of action against numerous defendants for actions over a 27–year period without alleging facts specific to individual defendants). BSC's motion will be denied on this basis.

**B. Statute of limitations**

Next, BSC argues that Plaintiff's claims are time-barred under Mo. Rev. Stat. § 400.2-725(1), which requires all breach of warranty claims to be filed within four years of the accrual of the cause of action, and Mo. Rev. Stat. § 516.120, which requires all personal injury claims to be filed within five years of accrual. Plaintiff's implant procedure took place on May 27, 2014. Because Plaintiff filed this action on November 5, 2019, more than four years after the applicable statute of limitations on her warranty claim began to run and more than five years after the applicable statute of limitations on her product liability claims began to run, BSC argues that her claims must be dismissed.

Citing Witherspoon v. General Motors Corp., 535 F. Supp. 432 (W.D. Mo. 1982), Plaintiff responds that because her warranty claim involves personal injuries, Mo. Rev. Stat. § 516.120 applies to that claim. In Witherspoon, a car buyer brought an action to recover against the car's manufacturer on theories of negligence and breach of implied warranty after she was severely injured when the transmission slipped into gear, causing the car to run over her. After removal of the case, the manufacturer moved for judgment on pleadings on the breach of warranty claim. The

district court held that under Missouri law, the applicable statute of limitations was not the four-year statute of limitations for actions for breach of contract for sale under Mo. Rev. Stat. § 400.2-725(1), but, rather, the five-year statute of limitations for personal injury actions. Id. at 434. BSC appears to concede this point as it has not addressed it in its reply brief. In further response, Plaintiff asserts that her damages were not sustained and capable of ascertainment until "recently" (see Compl. at ¶ 24), and that BSC withheld information about the dangers of its products from doctors and their patients.

A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations only if it clear from the face of the complaint that the cause of action is time-barred. Humphrey v. Eureka Gardens Pub. Facility Bd., 891 F.3d 1079, 1081 (8th Cir. 2018); Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011). Here, however, it is not clear that Plaintiff's claims are barred by the statute of limitations.

In Missouri, the statute of limitations for personal injury claims is five years after the cause of action accrues. Mo. Rev. Stat. § 516.120. "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. The Missouri Supreme Court has defined "capable of ascertainment" as when "the evidence [is] such to place a reasonably prudent person on notice of a potentially actionable injury." Levitt v. Merck & Co., Inc., 914 F.3d 1169, 1171–72 (8th Cir. 2019) (quoting Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582 (Mo. 2006) (emphasis removed)). This "objective" test is from the standpoint of a "reasonable person in [plaintiff's] situation." Id. (quoting Powel, 197 S.W.3d at 584, 586). Both the "character of the condition ... and its cause" must be capable of ascertainment. Id. (quoting Elmore v. Owens-Illinois, Inc., 673 S.W.2d 434, 436 (Mo. 1984)). If,

as here, a claim is based on a "physical ailment, it is sustained and capable of ascertainment, at the latest when (i) it is diagnosed, and (ii) a theory as to its cause is ascertainable." Buttice v. G.D. Searle & Co., 938 F. Supp. 561, 566–67 (E.D. Mo. 1996).

BSC argues that in light of public allegations regarding pelvic mesh products in both the medical and legal communities, Plaintiff's claims accrued on May 27, 2014, the day of her implant procedure, or shortly thereafter, and that because Plaintiff filed her Complaint on November 5, 2019, more than five years after the statute of limitations began to run, her claims are time-barred. The Court finds this argument unpersuasive. See Levitt, 914 F.3d at 1174 (Under Missouri law as predicted by the Eighth Circuit Court of Appeals, mere knowledge in the medical community of a possible link between use of a medicine and a specific injury is not sufficient to cause a reasonably prudent person to know that he had a cause of action against the drug manufacturer.)

Furthermore, the complaint does not specify when Plaintiff began experiencing symptoms resulting from her implant procedure. Drawing the inferences from the complaint in Plaintiff's favor, the allegation says nothing more than that she experienced symptoms sometime after her surgery. As the complaint does not specify when that time was, there is no basis for applying the statute of limitations at this stage of the proceedings. See Hammonds v. Boston Scientific, No. 5:11-cv-00663-HE, 2011 WL 13177632, at *2 (W.D. Ok. Aug. 8, 2011) (denying motion to dismiss on statute of limitations grounds). BSC's motion will be denied on this basis.

**C. Pleading standards**

Lastly, BSC argues that Plaintiff fails to meet the pleading standards necessary to survive a motion to dismiss. Again, the only issue before this Court at the motion to dismiss stage is whether Plaintiff has alleged enough facts "to raise a right to relief above the speculative level ...." Twombly, 550 U.S. at 555.

**Negligence (Count I)**

Under Missouri law, "in an action for negligence, generally, a plaintiff must allege ultimate facts which if proven, show: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure." Redd v. DePuy Orthopaedics, Inc., 48 F. Supp. 3d 1261, 1270–71 (E.D. Mo. 2014) (citing Menz v. New Holland N. Am., Inc., 460 F. Supp.2d 1058, 1067 (E.D. Mo. 2006) aff'd, 507 F.3d 1107 (8th Cir. 2007). Thus, to recover on a claim for negligent manufacture, design or failure to warn, a plaintiff must establish that the defendant failed to use ordinary care to manufacture and/or design the product to be reasonably safe or to adequately warn of the risk of harm from the alleged defect. Id. See also Stanley v. Cottrell, Inc., 784 F.3d 454, 463 (8th Cir. 2015) (citations omitted). The Court will address Plaintiff's negligence claims together with her strict liability claims.

**Negligent design defect (Count I) and Strict liability design defect (Count II)**

Under Missouri law, a defendant may be found liable for a design defect if a plaintiff establishes the following elements: "(1) [the] defendant sold the product in the course of its business; (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; (4) [the] plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." Linegar v. Armour of Am., Inc., 909 F.2d 1150, 1152 (8th Cir. 1990); Smith v. Toyota Motor Corp., No. 2:16CV24 ERW, 2018 WL 1610226, at *3 (E.D. Mo. Apr. 3, 2018). BSC argues that Plaintiff fails to state a claim for design defect under negligence and strict liability theories because she has failed to allege how the Obtryx Sling deviated from BSC's specifications in such a manner as to be unreasonably dangerous.

Here, Plaintiff alleges a number of design defects, including the use of polypropylene material, which results in an unwanted immune reaction, as well as the use of non-medical grade material and counterfeit material from China; the propensity of the Obtryx Sling to contract or shrink inside the body and to degrade over time, causing a chronic inflammatory and fibrotic reaction; the use of "arms and anchors," which are likely to pass through contaminated spaces and injure major nerve routes in the pelvic region; and pore size and stiffness, creating a risk of chronic pain and ripping through vaginal tissue. (Compl. at ¶¶ 31, 47).

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Twombly, 550 U.S. at 555. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to 'give the defendant...fair notice of what the ... claim is and the grounds upon which it rests.' " Id. at 555 (citations omitted). All that is required of this short plain statement is that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 570. Indeed, "it would be rare for a plaintiff at the time of the filing of a complaint to have more factual information than that alleged …, i.e., that the defendants designed, manufactured and marketed the specified product; that the [plaintiff] used the product properly for its intended use …; and that the product directly and proximately caused [an injury]." Turner v. Mylan, Inc., No. 4:09-CV-1816-TIA, 2010 WL 1608852, at *2 (E.D. Mo. Apr. 20, 2010). Moreover, BSC is certainly aware of what defects the Obtryx Sling is alleged to have. See In re Boston Scientific Corp. Pelvic Repair System Products Liability Litigation, MDL No. 2326 (S.D. W. Va.), involving claims surrounding its allegedly defective Obtryx implant. The Court will deny BSC's motion to dismiss Plaintiff's design defect claims.

**Negligent manufacturing defect (Count I) and Strict liability manufacturing defect (Count III)**

A manufacturing defect occurs when something goes wrong in the manufacturing process and the product deviates from its intended condition. Gillan v. Wright Med. Tech. Inc., 396 F. Supp. 3d 844, 848 (E.D. Mo. 2019) (citation omitted). In a manufacturing defect case, the product is evaluated against the manufacturer's own standards and compared to similar products. Id. BSC argues that Plaintiff fails to state a claim for manufacturing defect under negligence and strict liability theories because she has failed to allege how the Obtryx Sling deviated from BSC's specifications in such a manner as to be unreasonably dangerous.

In response, Plaintiff argues she has sufficiently stated a manufacturing defect claim by alleging that BSC designed the Obtryx as a permanent implant for long term use; however, due to the manufacturing defect, it was not safe or effective for long-term use. (Compl. at ¶¶ 59-60). Plaintiff alleges that "[t]he manufacturing of the [Obtryx Sling] was defective due to, among other things, the use of non-medical grade material, smuggling in counterfeit material from China to manufacture the device, and inadequate specifications that were not adhered to …" (Id. at ¶¶ 31, 61). She further alleges that the Obtryx Sling "is not compatible with human tissue and promotes an immune response in a large subset of the population." (Id. at ¶¶ 33, 62). Plaintiff also alleges that the Obtryx Sling implanted in her was in the same or substantially similar condition as it was when it left BSC's possession, and in the condition directed by and expected by BSC. (Id. at ¶ 66).

There is a fine line between design and manufacturing defects; "sometimes subtle factual differences, when applied to a failure of a particular product, can appear as both a manufacturing and design defect." Gillan, 396 F. Supp. 3d at 848 (citing Richcreek v. Gen. Motors Corp., 908 S.W.2d 772, 776 (Mo. Ct. App. 1995)). BSC argues that Plaintiff has failed to assert facts stating that when she was implanted with the Obtryx Sling, it was not in the condition that BSC intended. But, like in Gillan, Plaintiff alleges that the Obtryx Sling differed from BSC's intended condition

because it failed. At this early stage of the litigation, this is sufficient for the manufacturing defect claim to proceed. Id. (citing Sumpter v. Allergan Inc., No. 4:17-CV-2289 RLW, 2018 WL 4335519, at *2 (E.D. Mo. Sept. 11, 2018) (holding that plaintiffs adequately pled a manufacturing defect claim when the allegations demonstrated that the product at issue deviated from the manufacturer's intended result)). The Court will deny BSC's motion to dismiss Plaintiff's manufacturing defect claims.

**Negligent failure to warn (Count I) and Strict liability failure to warn (Count IV)**

Under Missouri law, to establish a failure to warn claim, a plaintiff must show: (1) the defendant sold the product in question in the course of its business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning. Moore v. Ford Motor Co., 332 S.W.3d 749, 756 (Mo. banc 2011). While a plaintiff must show a product was unreasonably dangerous, Missouri law does not hold "that a finding of a product defect [is] a necessary predicate to a failure to warn action." Id. at 757.

BSC argues that Plaintiff fails to state a claim for failure to warn due to the learned intermediary doctrine. The learned intermediary doctrine provides that a manufacturer of prescription drugs or medical devices has a duty to warn a physician of the risks involved with its product. The physician then acts as a "learned intermediary" between the manufacturer and the patient so that any warning given to the physician is deemed a warning to the patient. Redd, 48 F. Supp. 3d at 1270-71 (citing Kirsch v. Picker Int'l, Inc., 753 F.2d 670, 671 (8th Cir. 1985); Doe v. Alpha Therapeutic Corp., 3 S.W.3d 404, 419 (Mo. Ct. App. 1999)).

Thus, to state a claim for failure to warn in a prescription medical device case in Missouri, a plaintiff must show: (1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. Brinkley v. Pfizer, Inc., 772 F.3d 1133, 1138–39 (8th Cir. 2014). Because the defective aspect of the product must cause the injury, the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e., that but for the inadequate warning, the treating physician would not have used or prescribed the product. Id.

BSC argues that Plaintiff does not allege any facts showing (i) the identity of her implanting physician; (ii) the actual warnings the unidentified physician received with respect to the Obtryx Sling; (iii) how such undisclosed warning were inadequate; or (iv) which alleged dangers were not disclosed. In other words, BSC argues that Plaintiff has not alleged any facts showing that if her physician had known of a specific risk associated with the Obtryx Sling, then he would not have used it with her.

Plaintiff responds that she has clearly alleged that BSC failed to provide her physician with adequate warnings of the Obtryx Sling's propensity to erode; the rate and manner of mesh erosion; the risk of chronic infections resulting from implantation and the need for corrective or revisionary surgery to adjust or repair the Obtryx Sling. (Compl. at ¶¶ 32, 73). There is no requirement that Plaintiff's implanting surgeon be named in the complaint, and BSC cites no authority in support of its contention. Plaintiff further alleges numerous instances of BSC concealing material information from her and her physician. (Id. at ¶ 74). In addition, Plaintiff asserts she would not have used the Obtryx Sling if her physician had been given adequate information. (Id. at ¶ 85).

In Redd, the district court noted that Missouri's learned intermediary doctrine is typically asserted as an affirmative defense to a failure to warn claim and that a plaintiff is not required to plead facts tending to negate it in order to survive a motion to dismiss. Redd, 48 F. Supp.3d at 1271 n. 5 (citing Alpha Therapeutic Corp., 3 S.W.3d at 418-21; Stanger v. Smith & Nephew, Inc., 401 F. Supp. 2d 974, 984 (E.D. Mo. 2005); Wright v. American Home Products Corp., No. 06-CV-4183-NKL, 2008 WL 1820902, at *3 (W.D. Mo. Apr. 18, 2008)). See also Bohenstiehl v. Wright Medical Group, Inc., No. 4:13-CV-853 (CEJ), ECF No. 36 at 5-6 (E.D. Mo. Jan. 29, 2014), where the district court denied defendant's motion to dismiss plaintiff's failure to warn claims despite defendant's argument that plaintiff was required to allege what warnings were given and how they were deficient. The Court will, therefore, deny BSC's motion to dismiss Plaintiff's failure to warn claims.

It is true, as BSC points out, that the complaint also alleges that BSC failed to provide adequate warnings to Plaintiff. See Compl. at ¶ 87 ("Defendant is strictly liable to Plaintiff for its failure to provide adequate and sufficient warnings to Plaintiff and to foreseeable users of the defective Product."). To be clear, Plaintiff's failure to warn claims can only be based on the information provided or not provided to her physician, not Plaintiff herself. Zetz, 398 F. Supp. 3d at 706–07; Hix, 2019 WL 6003456, at *5.

**Breach of warranties (Count V)**

Plaintiff alleges "[BSC] made numerous representations about the quality, safety, and effectiveness of the device, which formed warranties." (Compl. at ¶ 92). BSC argues that to the extent Plaintiff is asserting a claim for breach of express warranty, her claim fails because she has not identified any specific warranty BSC made regarding her Obtryx Sling or that any warranty BSC made formed the basis for her decision to undergo treatment with it. To the extent Plaintiff

is asserting a claim for breach of implied warranty of merchantability, BSC argues the claim is duplicative of her strict liability claims and must be dismissed. Lastly, BSC argues that Plaintiff's warranty claims are subject to the learned intermediary doctrine and should be dismissed.

Under Missouri law, the elements of a breach of express warranty claim are: "(1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact regarding the kind or quality of those goods; (3) the statement was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to the statement of fact; (5) the nonconformity harmed the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion." Gillan, 396 F. Supp. 3d at 848–49 (citing Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 122 (Mo. banc 2010); Mo. Rev. Stat. § 400.2 – 313.1(a)).

To recover for breach of implied warranty of merchantability under Missouri law, "a plaintiff must prove (1) that a merchant sold goods, (2) which were not 'merchantable' at the time of the sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury." Johnsen v. Honeywell Int'l Inc., No. 4:14CV594 RLW, 2015 WL 631361, at *5 (E.D. Mo. Feb. 12, 2015) (citing Ragland Mills, Inc. v. General Motors, Corp., 763 S.W.2d 357, 360 (Mo. Ct. App. 1989)).

The learned intermediary doctrine applies to warranty claims, and Plaintiff's claims must plead facts that would establish that BSC made warranties to her physicians that it subsequently breached. Fearrington, 410 F. Supp.3d at 806.

The complaint makes clear that BSC represented the Obtryx Sling to the medical community and to patients as being safe and effective. For instance, the complaint alleges that "[BSC] made claims and representation in documents it submitted to the FDA, in its reports to the

public and to healthcare professionals, and in advertisements that the [Obtryx Sling] did not present serious health risks." (See Compl. at ¶¶ 34, 39). Plaintiff further alleges that such representation were false and made to deceive her, her physicians, and other members of the medical community; were made to induce them into using or prescribing the product; and did have that effect. (Compl. at ¶¶ 35-36, 42-44). At this stage of the proceedings, these allegations are sufficient to satisfy the notice pleading requirements of Rule 8. See Hix, 2019 WL 6003456, at *6. The Court finds Plaintiff has sufficiently alleged a claim for breach of warranties. Thus, The Court will deny BSC's motion to dismiss Plaintiff's warranty claims.

**Punitive damages (Count VII)**

Finally, BSC argues that Plaintiff's claim for punitive damages should be dismissed because in Missouri, a party acting in good faith and with an honest belief that its conduct is lawful cannot be held liable for punitive damages, citing Rodriguez v. Suzuki Motor Corp., 936 S.W.2d. 104, 110 (Mo. banc 1996). BSC contends that Plaintiff's complaint actually establishes BSC's good faith by asserting, *inter alia*, that BSC tested its SUI products (Compl. at ¶ 16); obtained clearance from the FDA (id.); and provided directions for use and trained physicians on procedures for implanting the Obtryx Sling (id. at ¶ 67).

Under Missouri law, a plaintiff is entitled to punitive damages if she proves by clear and convincing evidence that the defendant's conduct was outrageous because of the defendant's reckless indifference to the rights of others. Gilliland v. Missouri Athletic Club, 273 S.W.3d 516, 520 (Mo. 2009) (citing Burnett v. Griffith, 769 S.W.2d 780, 787 (Mo. banc 1989) (quoting Restatement 2d of Torts Sec. 908(2) (1979)); see also Brady v. Curators of University of Missouri, 213 S.W.3d 101, 107 (Mo. Ct. App. 2006).

Plaintiff points to several factual allegations that the Court must take as true: that BSC sold its product without adequate testing, and despite knowledge that the polypropylene used in the Obtryx Sling was not suitable for implantation in the body (Compl. at ¶¶ 108-09); "knew and recklessly disregarded the fact that the [Obtryx Sling] caused serious complications with greater frequency than feasible alternative methods and/or products used to treat SUI; (id. at ¶ 112); "misstated and misrepresented data … so as to minimize the perceived risk of injuries caused by the [Obtryx Sling]" (id. at ¶ 113); and "knew of the [Obtryx Sling]'s defective and unreasonably dangerous nature, but continued to mislead physicians and patients and to manufacture, market, distribute, and sell the [Obtryx Sling] so as to maximize sales and profits at the expense of the health and safety of the public" (id. at ¶ 115). At this early stage of the litigation, these allegations are sufficient for Plaintiff's punitive damages claim to proceed. See Fearrington, 410 F. Supp. 3d at 808-09.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Boston Scientific Corporation's Motion to Dismiss Plaintiff's Complaint [7] is **GRANTED** with respect to Count VI – Gross Negligence, and Count VI is **DISMISSED with prejudice**. In all other respects, the motion is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Boston Scientific Corporation shall file an answer to Plaintiff's complaint within twenty-one days of the date of this Order.

Dated this 13th day of April, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**